J. Edward SIMMONS,
Plaintiff-Appellee,

v.

John R. BLOCK, individually and in his capacity as Secretary of Agriculture; Charles W. Shuman, individually and in his capacity as Administrator of the Farmers Home Administration; Orson G. Swindle, III, individually and in his capacity as State Director of Farmers Home Administration; Ralph Petree, individually and in his capacity as District Director of Farmers Home Administration; Claude McKenzie, individually and in his capacity as County Supervisor, Defendants,*

The Buckeye Cellulose Corporation,
Defendant-Appellant.

No. 84–8931.

United States Court of Appeals,
Eleventh Circuit.

Feb. 27, 1986.

---

\* By motion the federal defendants withdrew their appeal previously filed and are not before the Court.

Paul Franz, Cincinnati, Ohio, for Buckeye Cellulose Corp.

John J. Flynt, Jr., John M. Cogburn, Jr., Griffin, Ga., for plaintiff-appellee.

Before HILL and FAY, Circuit Judges, and HOFFMAN,** Senior District Judge.

WALTER E. HOFFMAN, Senior District Judge:

This appeal is from an order of the district court enjoining the defendants John R. Block, Secretary of Agriculture; Charles W. Shuman, the Administrator of the Farmers Home Administration; Orson G. Swindle, III, State Director of the Farmers Home Administration; Ralph Petrie, District Director of the Farmers Home Administration; and Claude McKenzie, County Supervisor, (the "federal defendants") from selling certain property which had been declared surplus by the Farmers

Home Administration ("FmHA"), to the defendant-appellant, The Buckeye Cellulose Corporation ("Buckeye"). The district court also ordered and directed the federal defendants to prepare the appropriate documents for the sale of the property to the appellee J. Edward Simmons. The district court ordered the federal defendants to present the documents to Simmons for execution, in return for the down-payment required by his bid on the property.

The issue which was the subject of the interlocutory order by the district court was disposed of in cross-motions for summary judgment by Simmons and the federal defendants; the parties agreed that there were no disputed issues of material fact. Although Buckeye did not file a motion for summary judgment, in open court Buckeye stated that it was in accord with the position taken by the federal defendants. After having initially filed a notice of appeal, the federal defendants were dismissed on their motion. Buckeye remains as the single appellant. In the district court Buckeye also filed a cross-complaint against the federal defendants to recover its costs if the sale was subsequently overturned. No final judgment has been rendered on the cross-complaint.

We vacate the order of the district court and remand this case for further proceedings consistent with this opinion.

**FACTS**

In December 1983 the FmHA held 690.11 acres of property in Webster and Marion Counties, Georgia. After learning that the FmHA sought $239,000 for said property, Simmons privately offered the agency that amount; however, Simmons was ineligible to receive financial assistance from the FmHA so the private sale could not be consummated. Since no eligible person of-

** Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

fered to buy the land, the FmHA declared the property surplus and offered it for public sale.

Appropriate local newspapers carried the FmHA's advertisement on December 8, and December 15, 1983. In addition to the location and description of the property, the advertisement contained the following paragraph outlining terms:

> The farm is offered for sale to the highest bidder for cash or on terms of 5 percent cash down payment with the balance payable in annual installments over a 25-year period, with interest per annum at the rate of 10.75 percent.

At the conclusion of a subsequent paragraph discussing the details of submitting an offer, the following sentence appeared: "The farm will be sold to the highest bidder, subject to the right of FmHA to accept or reject any or all bids submitted."

Both Buckeye and Simmons complied with all terms of the advertisement. Buckeye submitted a cash bid of $231,150. Simmons submitted a credit bid of $241,890.50, promising five percent down, the balance payable in annual installments over 25 years, with interest per annum at the rate of 10.75%. The record also refers to a third bid, which is not the subject of this appeal.

Testimony at trial revealed that on the day of bid opening, Claude McKenzie, the FmHA County Supervisor, had called Simmons to discuss the bid. McKenzie had acknowledged Simmons' credit bid and had indicated that cash bids were treated differently from credit bids. Simmons' testimo-

ny reveals his belief that the government's published terms were established in order to make credit bids equivalent to cash. Apparently because of this belief, Simmons responded negatively to McKenzie's inquiry as to whether he wanted to bid cash for the property.

Trial testimony further brought out that the credit terms offered in the advertisement were established in accordance with Regulations § 1955.116.[1] McKenzie testified that no one in his office had attempted to negotiate with Simmons after the sealed bids were opened even though on other occasions his staff had followed the regulation provisions permitting such negotiated sales.

Federal defendants McKenzie and Ralph Petrie, the State Director of the FmHA, testified that the agency had an internal policy of preferring cash bids that were within five percent of credit bids. Both witnesses testified that this FmHA policy was not in writing and not available to Simmons.[2] The witnesses further stated that Simmons was not informed of the agency's policy preferring cash bids. A reasonable inference from the trial testimony is that Simmons did not know and could not have found out about the FmHA's internal policy preferring cash.

After Simmons received McKenzie's letter stating that he was not the successful bidder, Simmons pursued administrative appeals of that decision through the FmHA heirarchy up to and including the Secretary of Agriculture. Having exhausted his administrative appeals, Simmons initiated this civil action against the federal defendants and Buckeye.

---

1. 7 C.F.R. § 1955.116(b)(3)(iii) provides:
   If no acceptable bid is received from sealed bids or at public auction, the State Director may sell the property at the best price obtainable without further public notice by negotiating with interested parties including all previous bidders. The rates and terms offered through negotiation will be within the limitations outlined in Section 1955.116(b)(1) or as authorized by the Administrator. [Subparagraph (a) of the same section says that] in negotiating a sale, offers may be solicited orally or in writing. Such sales may be advertised in local newspapers. In

   some instances it may be possible to assemble the persons interested in purchasing the property for open competitive bidding. If offers are solicited, the invitation to negotiate will include the minimum price which the government will negotiate and the place, date, and time when offers will be considered.

2. Clearly this preference for cash bids was not stated in the advertisement to which Simmons responded. Subsequent similar advertisements have included an explanation of the preference.

## JURISDICTION

■ At oral argument this court questioned its jurisdiction over the case at bar. The original briefs of both parties noted jurisdiction under 28 U.S.C. § 1291. However, the finality required by § 1291 is challenged by the fact that Buckeye's cross-claim against the federal defendants has not been decided by the trial court. Ordinarily, the jurisdiction of this court requires a final judgment in the district court. One principle which allows for a flexible interpretation of the final judgment requirement is found in *Forgay, et al. v. Conrad,* 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848). In *Forgay,* as in the present case, the specific order provided for immediate execution of a command that property be delivered to the appellant's adversary. The order to deliver the property was held to be final and thus subject to review on writ of error. *See* 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction,* § 3910 (1976). Because of the similarity between *Forgay* and the present case, we hold that the *Forgay* principle applies and that we have jurisdiction to review under 28 U.S.C. § 1291.

■ This court also has jurisdiction to hear the case because the order appealed from is clearly an injunction. The order is interlocutory because Buckeye's cross-claim against the federal defendants is still pending in the district court. Whenever a court fully adjudicates a claim for an injunction and does not execute a Fed.R. Civ.P. 54(b) certificate, as is true in the case at bar, the adjudication is interlocutory if other claims remain pending. *Ackerman-Chillingworth v. Pacific Electrical Contrs. Ass'n.,* 579 F.2d 484, 489 (9th Cir. 1978), *cert. denied* 439 U.S. 1089, 99 S.Ct. 872, 439 L.Ed.2d 56 (1979); *Hartford Fire Insurance Co. v. Herrald,* 434 F.2d 638, 639 (9th Cir.1970); *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 243 (3d Cir.1968). The appealability of an injunction under 28 U.S.C. § 1292(a) is not affected by Fed.R. Civ.P. 54(b). *United States v. County of Humboldt,* 615 F.2d 1260, 1261 (9th Cir. 1980); *Ransburg Electro-Coating Corp. v. Lansdale Finishers, Inc.,* 484 F.2d 1037, 1038 (3d Cir.1973). Because the order of the district court is an interlocutory injunction, this court also has jurisdiction to hear the appeal from that order pursuant to 28 U.S.C. § 1292(a).

## ARBITRARY AND CAPRICIOUS CONDUCT

In a well-reasoned conclusion of law, the district court analyzed 7 U.S.C. § 1985(c) to determine the nature of the agency's discretion in the sale of surplus land. The court correctly found that the discretion committed to the FmHA is to prescribe the credit terms. The determination of the "best price obtainable for cash or on secured credit," according to the terms of the statute, requires a single comparison of the cash and credit bids which are submitted in accordance with the prescribed terms. As the district court accurately held, the Secretary has full latitude under the statute to prescribe market interest rates at the time the property is offered for sale, so long as the rates and terms are not more favorable than those legally permissible for eligible borrowers. Therefore, the Secretary should comply with the statutory directions by setting credit terms so that they are equivalent to cash at the time of the advertisement.

The regulations promulgated by the Secretary provide that the property "shall be offered for sale for cash or on terms that will provide the best net return for the government." 7 C.F.R. § 1955.116(b)(1). The most reasonable interpretation of this regulation is that when the FmHA offers property for sale on terms, the terms offered must be those which will provide the "best net return to the Government." After the Secretary has set the credit terms, the agency must then accept "the highest qualified bid [representing] the best price obtainable." 7 C.F.R. § 1955.116(b)(3)(i)(B). In the alternative, the agency may reject all bids and seek to negotiate a sale. 7 C.F.R. § 1955.116(b)(3)(iii).

■ In the present case, the agency followed neither course of action specified

in the regulations. Instead, the agency awarded the contract to Buckeye, whose cash bid was lower than Simmons' credit bid. The FmHA relied on a "internal policy" of preferring cash bids that are within five percent of credit bids. This "internal policy" appears nowhere in the relevant regulations. The failure of an agency to comply with its own regulations constitutes arbitrary and capricious conduct. *Boyd v. Secretary of Agriculture*, 459 F.Supp. 418 (D.S.C.1978). The courts must overturn agency actions which do not scrupulously follow the regulations and procedures promulgated by the agency itself. *U.S. v. Heffner*, 420 F.2d 809 (4th Cir.1969); *Payne v. Block*, 714 F.2d 1510 (11th Cir. 1983), *clarified on rehearing*, 721 F.2d 741, *cert. granted, judgment vacated, and remanded sub nom., Block v. Payne*, —— U.S. ——, 105 S.Ct. 65, 83 L.Ed.2d 15 (1984), *on remand sub nom., Payne v. Block*, 751 F.2d 1191 (11th Cir.1985), *cert. granted sub nom. Block v. Payne*, —— U.S. ——, 106 S.Ct. 57, 88 L.Ed.2d 46 (1985). We are in complete agreement with the decision of the district court to strike down the agency's acceptance of Buckeye's lower cash bid. Absent the FmHA's attempt to negotiate a sale, such acceptance amounted to arbitrary and capricious conduct.

Since the date of the advertisement which precipitated the bids and subsequently the controversy in this case, the FmHA has included in its advertisements a statement of its preference for cash bids within five percent of credit bids. This case could have been avoided by the earlier prudent disclosure of the policy. Just as Justice Frankfurter admonished that those who deal with the government must turn square corners,[3] in the present case and in light of the language of the advertisement, we feel that the government should meticulously follow its own guidelines in dealing with its constituents.

Even though the FmHA was incorrect in accepting Buckeye's bid, we cannot uphold the district court's order that the agency prepare documents for the sale of the property to Simmons. As early as 1848, the Supreme Court indicated its disapproval of such orders. *Forgay*, 47 U.S. at 204, 6 How. at 204. More recently, *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859 (D.C.Cir.1970), has held that the plaintiff has no right to have the contract awarded to it in the event that the district court finds illegality in the award of a contract. This principle has been followed or cited with approval in a line of cases. *See, Id.* at 864. *CACI Inc.—Federal v. United States*, 719 F.2d 1567, 1575 (Fed.Cir.1983); *Cincinnati Electronics Corp. v. Kleppe*, 509 F.2d 1080, 1089 (6th Cir.1975); *T.M. Systems, Inc. v. United States*, 473 F.Supp. 481, 486 (D.Conn.1979). Simmons relies on *Superior Oil v. Udall*, 409 F.2d 1115 (D.C.Cir.1969), in his argument that this court should uphold the district court's order that the FmHA award the contract to him. The factual situation in *Superior* is not adequately analogous to the present case to support Simmons' reliance. In *Superior*, the highest bid was unsigned and therefore disqualified. (The Secretary of the Interior's reversal of the disqualification of the highest bidder was overturned by the court.). For the court to have reopened the bidding process and to have allowed the bidder whose error created the problem to have another opportunity to bid against Superior would have been inequitable. *Superior*, 409 F.2d at 1122. In *Superior*, the court justifiably awarded the contract to the highest qualified bidder.

■ In the present case, neither bidder is disqualified; neither bidder is at fault. The equitable solution is to have the State Director or designated staff member scrupulously follow the guidelines of 7 C.F.R. § 1955.116(b). Under the regulations, the Director must first advertise the property anew, this time fully disclosing the agency's preference for cash bids. If the Director accepts one of the new bids, the

---

**3.** *Rock Island, Arkansas & Louisiana R. Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920).

property must be disposed of according to the regulations. In the event that no acceptable bid is received, then the Director may negotiate a sale pursuant to the specifications of 7 C.F.R. § 1955.116(b)(3)(iii).

For the foregoing reasons, the judgment of the district court is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.