**JEFFREY S., a minor, by ERNEST S., his father and next friend, Plaintiff–Appellee,**

v.

**STATE BOARD OF EDUCATION OF STATE OF GEORGIA; Dr. Werner Rogers, in his official capacity as Superintendent of the State Board of Education, Defendants,**

**Bryan County School District; Dr. Sallie Brewer, in her official capacity as Superintendent of the Bryan County School District, Defendants–Appellants.**

No. 89–8784.

United States Court of Appeals, Eleventh Circuit.

March 13, 1990.

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

Gerald M. Edenfield, Susan Cox, Becky J. Dasher, Statesboro, Ga., and M. Tyus Butler, Jr., Savannah, Ga., for defendants-appellants.

Torin D. Togut, Phyllis J. Holmen, Georgia Legal Services Program, Atlanta, Ga., and Murphy A. Cooper, III, Georgia Legal Services Program, Savannah, Ga., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, and JOHNSON and ANDERSON, Circuit Judges.

PER CURIAM:

Bryan County School District ("Bryan County") appeals from a preliminary injunction ordering Bryan County to allow Jeffrey S. to remain in a class of moderately mentally handicapped students in the Bryan County school system. The injunction has been stayed pending the outcome of this appeal; Jeffrey S.'s emergency motion to vacate the stay of injunction is also presented on this appeal.

## I.  STATEMENT OF THE CASE

### A.  *Background*

Jeffrey S. ("Jeffrey")[1] is a 15–year–old boy with an I.Q. of less than 50. He is classified as mildly to moderately mentally handicapped. As a result of a condition known as posterior ureteral valves, Jeffrey's kidneys have failed and he is in end-stage renal disease.[2] He must use a ureterostomy, which drains his urine through a tube outside his abdomen and into an ileostomy bag. Jeffrey requires three hours of dialysis twice a week. As a

---

1. The record has been sealed in this case because of the sensitive nature of the disease involved. Jeffrey S.'s true identity was kept confidential at the lower court level; although the district judge decided to end the confidentiality when he ordered the preliminary injunction, this opinion will refer to the appellee as Jeffrey S.

2. The term "end-stage" is used to refer to persons who need technological assistance, such as dialysis, to maintain their kidney function sufficiently to keep them alive.

result of his renal failure, Jeffrey suffers from metabolic bone disease, a degenerative bone condition which causes softening of the bone tissue; he has had hip surgery and wears leg braces due to this condition. He is also a carrier of hepatitis B, an infectious virus which is carried in blood serum, or "plasma."

Jeffrey lives with his father, his stepmother, and several siblings in a mobile home. In 1981, Jeffrey began to attend public school. He was placed in a special class at Lanier Elementary School and taught under an Individualized Education Program ("I.E.P."); he received approximately 26 hours of instruction per week. Part of his school day was spent in a self-contained classroom with other special children; he received individual instruction for the rest of the day. He ate and played with the other children. In May 1986, a social worker from the hospital where Jeffrey undergoes dialysis told Jeffrey's teacher that Jeffrey was a hepatitis B carrier. This information eventually reached the superintendent of the Bryan County School District. At the superintendent's instruction, the special education director sent a letter to Jeffrey's father informing him that Jeffrey could not attend school in the Bryan County system until he was no longer contagious.[3] Jeffrey was kept out of school entirely until October or November 1986. At this time, Jeffrey was placed in a Hospital/Homebound program[4] at Black Creek Elementary for about three hours a week.[5]

Jeffrey was unhappy at being separated from the other children. His father sought an administrative due process hearing in an attempt to get Jeffrey back in the handicapped class. The school provided a due process hearing on January 29, 1987 before the regional hearing officer. The regional hearing officer ordered Jeffrey to continue homebound instruction, noting that his educational level seemed to have improved in that setting and that "[t]he social justice of integrating Jeffrey S. into a classroom is far outweighed by the social injustice of one person getting Hepatitis B virus as a result of an incorrect decision...."[6] The state hearing officer affirmed this decision.

### B. Proceedings Below

On January 4, 1988, Jeffrey filed suit through his father for violation of his civil rights pursuant to 42 U.S.C.A. § 1983. The complaint named the Georgia State Board of Education, the state superintendent, the Bryan County school district, and the local superintendent as defendants. The complaint alleged six causes of action for injunctive and declaratory relief and damages under the Education for All Handicapped Children Act, 20 U.S.C.A. § 1400, et seq. (EAHCA), section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 ("section 504"), the Fourteenth Amendment, and state law. During discovery, the magistrate ordered an independent medical evaluation of Jeffrey by an infectious disease expert, Dr. Paul Jurgensen. Although he stated that the risk of transmission was low, Dr. Jurgensen recommended that Jeffrey not be allowed to enter a conventional classroom.

The magistrate conducted a hearing beginning April 18, 1989. Bryan County objected to the magistrate's exercise of jurisdiction over the case; apparently this objection was overruled. On August 3, 1989, the magistrate issued his proposed findings of fact and conclusions of law.[7] The magistrate found that Jeffrey was a handi-

---

3. Jeffrey's father is illiterate. The letter contained no explanation of Mr. S.'s rights as a parent or of available appeal procedures.

4. A homebound program is a one-on-one program where the homebound child is placed into a classroom alone with one teacher. A homebound child has no interactions with other students.

5. Three hours a week is the minimum length of time that a child may attend a Bryan County

school and remain registered. Additionally, Jeffrey is easily distracted and has a limited endurance level; three hours a week is often as much as he can tolerate.

6. The hearing officer did, however, order additional hours of instruction and programming.

7. Because the opening of the school year was rapidly approaching, the magistrate addressed only the issue of injunctive relief.

capped child and a carrier of the hepatitis B virus. He found that the virus primarily affects the liver and is found in plasma. Approximately 200,000 cases of acute hepatitis are reported each year, less than 10% of which become chronically infectious. The disease can be fatal, but less than 1% of those infected die. Clinical manifestations of the disease appear 45 to 160 days following exposure. In its acute stages the disease usually causes a yellow pallor in the skin, nausea, and vomiting. The disease is transmitted primarily through plasma; sharing of needles, sexual contact, blood transfusions, or a mutual accident resulting in the mixing of bloods pose high risks of infection. Transmission through other bodily fluids, such as saliva, urine, or tears, is theoretically possible if there is some plasma in those fluids. There is no evidence that the disease is transmitted through other forms of contact.

The magistrate found that Jeffrey's ileostomy bag had suffered leakage in the past, but that new bags had virtually eliminated this problem.[8] Jeffrey had had blood in his urine only once as the result of a kidney infection. Although Jeffrey does sometimes mouth objects, the potential risk of transmission due to such behavior is minimal, as there must be blood in the saliva to cause transmission. Jeffrey is in the classroom less than other children because of his dialysis. Additionally, Jeffrey has negative surface antigens which render him a less infectious carrier.[9] The magistrate found that numerous protective measures could be taken to decrease Jeffrey's transmission risk even further, such as immunizing students and staff, having Jeffrey's ileostomy bag drained each day before he comes to school, and restricting Jeffrey from participating in sports and contact games.

Finally, the magistrate found that Jeffrey was excluded from school solely because of his handicap (hepatitis B carrier), that this exclusion was not based on credible medical evidence, and that Bryan County excluded Jeffrey arbitrarily, without a hearing, without a showing that he presented a danger to others, and without further medical consultation or examination.[10]

The magistrate concluded as a matter of law that hepatitis B constitutes a handicap under section 504.[11] He found Jeffrey was an "otherwise qualified" handicapped person because the risk of transmission is low and hepatitis B is fatal in only 1% of cases. Finally, the magistrate concluded that Jeffrey had been discriminated against solely because of his handicap. In recommending a preliminary injunction, the magistrate found that Jeffrey had a substantial likelihood of prevailing on the merits of his case, that Jeffrey would be substantially injured emotionally and educationally by being kept from school, and that the injunction would not disserve the public interest because school attendance would make Jeffrey a more productive, fulfilled child.

The magistrate recommended that the preliminary injunction be granted on the condition that: (1) Jeffrey not be allowed to engage in any physical, contact sports; (2) the school district follow all precautions recommended by the Center for Disease Control and report any lesions on Jeffrey or instances of possible transmission; (3) the school train the staff and personnel on hepatitis B; (4) Jeffrey's status be kept confidential; (5) the school make it known that a hepatitis vaccine is available and educate the students about it; and (6) the court make copies of the order available to teachers and staff. Bryan County filed 60

8. In the past, Jeffrey used a "Texas catheter" bag. Apparently the adhesive on this bag did not hold the bag firmly against the stoma, or opening in the skin, and thus urine leaked out in large amounts and soaked Jeffrey's clothes. The new bag, a "Bard" bag, has a different type of adhesive which prevents leakage.

9. Jeffrey's doctor testified that the risk of infection was slight, and Dr. Jurgensen testified that the risk of transmission was minimal.

10. The magistrate also found that Bryan County officials knew that Jeffrey's father was illiterate, and yet unreasonably placed the burden on Mr. S. to prove that Jeffrey was not dangerous.

11. Section 504 states that no "otherwise qualified" handicapped person shall be discriminated against because of his handicap.

pages of objections to the magistrate's report. After four days, the district court adopted the magistrate's recommendation in full, except the recommendation that Jeffrey's identity be kept confidential.

On September 22, 1989, Bryan County filed a notice of appeal from the grant of preliminary injunction with this Court, along with a brief arguing that the Court should suspend the injunction pending appeal.[12] The district court stayed the injunction pending appeal. On October 13, 1989, Jeffrey S. filed with this Court an emergency motion to vacate the stay of injunction. A panel of this Court ordered a limited remand with directions that the district court make findings with respect to the balance of harms from granting or denying the stay. The panel deferred action pending those findings. The panel also ordered the appeal to be expedited to the next available panel for oral argument.

On limited remand, the district judge stated the following:

> In this matter I have adopted the report and recommendation of the United States magistrate with one exception. While I disagreed with the magistrate in his direction that the condition of the plaintiff be kept confidential, otherwise, I found his findings of fact to be supported by the record and his conclusions of law not clearly erroneous. While my adoption of the report and recommendation was technically a *de novo* ratification thereof, I have relied heavily upon the magistrate's assessment of the evidence and his judgment in drawing reasonable inferences

therefrom. I did not hear the evidence "first hand" as he did.

The emergency motion to vacate the stay has been carried with the case.

## II. ISSUES

On appeal, we first consider whether the district court erred in referring this case to a magistrate without the consent of the parties and without written order. Second, we consider whether the district court conducted the proper *de novo* review of the magistrate's report and recommendation. Because we find that the district court failed to conduct the proper *de novo* review of the magistrate's findings, we do not reach the merits of the grant of preliminary injunction.

## III. ANALYSIS

### A. *Submission to a Magistrate*

The district court did not issue a written order specifying the grounds on which it referred the case to the magistrate.[13] Jeffrey argues that the case was submitted to the magistrate on a pre-trial motion for a preliminary injunction in accordance with 28 U.S.C.A. § 636(b)(1)(B), and that consent of the parties was not needed for such a referral. *See Collins v. Foreman*, 729 F.2d 108, 116 (2nd Cir.), *cert. denied*, 469 U.S. 870, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984) (litigant consent is not necessary for pretrial motion referrals).[14] Bryan County argues that the magistrate conducted a full-scale civil trial without the consent of the parties in violation of 28 U.S.C.A.

---

**12.** The State Board did not file an appeal.

**13.** Such a written referral is not required by 28 U.S.C.A. § 636, which regulates proceedings before a magistrate. *See Parker v. Mississippi State Dept. of Public Welfare*, 811 F.2d 925, 928 (5th Cir.1987). Some courts have expressed the sound opinion that a written referral would be good practice. *Id.* at n. 7; *Silberstein v. Silberstein*, 859 F.2d 40, 42 (7th Cir.1988); *Archie v. Christian*, 808 F.2d 1132, 1137 n. 4 (5th Cir. 1987).

**14.** Title 28 U.S.C.A. § 636(b)(1)(B) states:
A judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)....

Similarly, Local Rule 21.3 for the Southern District of Georgia states: "(a) In accordance with 28 U.S.C. § 636(b)(1)(B) and (c), a full-time magistrate may hear and conduct such evidentiary hearings as are necessary or appropriate, and submit to a judge proposed findings of fact and recommendation for the disposition of: ... (3) motions for injunctive relief (including ... preliminary injunctions)...."

§ 636(c).[15] Because a magistrate cannot conduct a trial without the consent of the parties, and because it is clear that consent was not obtained in this case, we begin by determining whether the magistrate did in fact conduct a trial rather than a hearing on a pre-trial motion.

The present disposition of the case indicates that the district court did not intend for the magistrate to conduct a trial. Jeffrey requested temporary injunctive relief in his complaint, and the district court's only response to the magistrate's recommendation was to grant a preliminary injunction. The district court has not issued a final order on Jeffrey's claims for declaratory relief, permanent injunctive relief, and damages.[16] *See* Federal Rule of Civil Procedure 54(b). Bryan County argues, however, that a reading of the magistrate's report and recommendation indicates that the magistrate actually conducted a nonjury civil trial on all of the issues raised in Jeffrey's complaint, disguised as a pre-trial motion hearing. This conclusion is incorrect. The magistrate began by stating on page 2 of the report: "this order will address only the issue of whether the plaintiff's claim for injunctive relief to return to a regular classroom setting should be granted." The magistrate did not consider Jeffrey's claims for permanent injunctive relief, damages, or declaratory relief. He did not consider Jeffrey's claims under the EAHCA, the Fourteenth Amendment, or the pendant state law claims. He did not enter judgment in the case, but merely made a recommendation.[17] He made only those findings of fact and conclusions of law necessary to determine whether Jeffrey met the requirements for a preliminary injunction. For the above reasons, we find that the magistrate properly heard a pre-trial motion as authorized by section 636(b)(1)(B).

### B. *Review by the District Court*

Bryan County next argues that the district court failed to conduct the required *de novo* review of the magistrate's report and recommendations. We agree with Bryan County on this issue.

Section 636(b)(1) states:

Within ten days after being served with a copy any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.

The House Report on the bill enacting this section explained: "The amendment states expressly what the Senate implied: i.e., that the district judge in making the ultimate determination of the matter, would have to give fresh consideration to those issues to which specific objection has been made by a party." H.R.Rep. No. 94–1609, 94th Cong., 2nd Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6163.

The *de novo* review requirement is essential to the constitutionality of section 636. As this Court discussed in *Hall v. Sharpe*, 812 F.2d 644, 647 (11th Cir.1987), section (b)(1) allows a magistrate to take over several functions that are otherwise reserved to Article III judges. "Section (b)(1)'s nonconsensual reference is saved from constitutional infirmity by the retention in the Article III judge of the ultimate adjudicatory power, to be exercised after

---

15. Title 28 U.S.C.A. § 636(c)(1) states: "Upon consent of the parties, a full-time United States magistrate ... may conduct any or all proceedings in a ... civil matter and order entry of judgment in the case...."

16. Bryan County's appeal to this Court is interlocutory in nature. *See* 28 U.S.C.A. § 1292(a)(1); *Simmons v. Block*, 782 F.2d 1545, 1549 (11th Cir.1986) ("Whenever a court fully adjudicates a claim for an injunction and does not execute a Fed.R.Civ.P. 54(b) certificate ...

the adjudication is interlocutory if other claims remain pending.").

17. The mere existence of a recommendation will not change a full trial into a pre-trial motion. *Hall v. Sharpe*, 812 F.2d 644, 647 (11th Cir.1987). The proceedings before the magistrate, however, were too limited in scope to constitute a full trial. The magistrate did schedule a full trial for the future, but that is more appropriately challenged in another action and is not ripe for consideration here.

assistance from and upon the recommendation of the magistrate." *Id.* Thus, although *de novo* review does not require a new hearing of witness testimony, *United States v. Raddatz*, 447 U.S. 667, 675–76, 100 S.Ct. 2406, 2412–13, 65 L.Ed.2d 424 (1980), it does require independent consideration of factual issues based on the record. *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). If the magistrate makes findings based on the testimony of witnesses, the district court is obliged to review the transcript or listen to a tape-recording of the proceedings. *Id.; Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352, 356 (5th Cir. 1980).

■ The district court in the present case clearly failed to conduct such a *de novo* review. In its certificate of findings on limited remand, the court stated, "While my adoption of the report and recommendation was technically a *de novo* ratification thereof, I have relied heavily upon the magistrate's assessment of the evidence and his judgment in drawing reasonable inferences therefrom." Whether the review constituted even a technical *de novo* review is questionable. The hearing lasted six days and resulted in a six-volume transcript, and Bryan County filed 60 pages of objections to the report. Yet the district court adopted the magistrate's recommendation after only four days.

■ Further, the district court found that the magistrate's findings were not clearly erroneous. First, the clearly erroneous standard of review applies to a magistrate's findings of fact only on appeal. *LoConte v. Dugger*, 847 F.2d at 750. Second, while the court stated that the findings were not clearly erroneous, it also stated:

> While I have adopted the substance of the report and recommendation as my own order, I cannot state that either its findings of fact or conclusions of law are beyond question. Indeed, this is a highly controversial and unusual, if not novel, case. The plaintiff Jeffrey S. has a lingering infection and may be a carrier of

hepatitis B for the rest of his life. The plaintiff's disease is a highly contagious and serious, sometimes fatal, illness. The balance of harm between the enforcement of the plaintiff's right to an education and the potential adverse impact upon the public is quite obvious.

Even if the clearly erroneous standard had been the correct standard to apply, the above language reflects doubt on the judge's conclusion that the report was not clearly erroneous. The district court did not conduct a true *de novo* review of the objected-to portions of the report.

## IV. CONCLUSION

Because the potential harm to both parties is so severe, it is imperative that this case be tried on the merits, and that a final order issue. We find that the district court failed to conduct the proper *de novo* review of the magistrate's report and recommendation, and we VACATE the preliminary injunction and REMAND the case for a full hearing on the merits by the district court.

VACATED and REMANDED.