DOWD, District Judge,
concurring in part and dissenting in part:
Initially, I concur in the affirmance of the convictions and sentences of the appellants Dwight Faulk, Linda Williamson and Jennifer McKee. I respectfully dissent as to the affirmance with respect to appellant Brian McKee.
The centerpiece of the government’s case against Brian McKee was the recitation of his oral admission as offered by FBI Special Agent Keith Baker. Simply put, Agent Baker stated that Brian McKee told him “that he knew what he was doing was illegal” in the following testimony:
Q. Sir, did you have an opportunity to conduct an interview of Brian McKee?
A. Yes, I did.
Q. Did Mr. McKee tell you that his address is 400 Bachelor Chapel Road, Gadsden, Alabama?
A. He did.
Q. Did he tell you that Big Wheel Recycling was formed in 1995 and it is a corporation?
A. What year did you say, sir?
Q. Formed in 1995.
A. That’s correct.
Q. Did McKee tell you that he brought forward the resolution to allow recyclers to get a discounted rate at the Etowah Solid Waste Disposal Authority?
A. Yes, he did.
Did McKee claim that he was being paid because of his having gotten the recycling resolution passed and for giving Big Wheel the discounted rate of $8.75 a ton for dumping debris at the Etowah Solid Waste Disposal Authority? <£>
Yes, he did. <!
When he was asked if the board members knew of the $8.75 a ton rate, did he tell you that he was never questioned about it by any of them? &
A. He did.
Q. Did he tell you that he left the $17.50 per ton rate on the weight scale bills so the manufactured housing companies would not know about the $8.75 a ton rate?
A. - He did.
Q. Did he tell you that CEI also got the $8.75 a ton rate, and they were not entitled to it?
A. That is correct.
Q. Did he tell you that Sue Rogers did not know about the Big Wheel Re- . cycling — did not know about Big Wheel Recycling when the 50 percent discount resolution was passed?
*1306 A. That is correct.
Q. Did Mr. McKee tell you that he knew what he was doing was illegal?
A. Yes, he did.[1]
Tr., Vol. 20 of 29 at 154-55.
In advance of trial, on August 3, 2001, Brian McKee filed a motion to suppress his statements “of any nature obtained ... by any and all investigative officers.” In addition to raising a Miranda claim,[2] Brian McKee alleged that the statements “were involuntary” for several reasons: (1) because statements made by the investigating officers to the defendant were intentionally false and misleading; (2) because the defendant was exhausted due to the late hour and the fact that the interrogation was so long in duration, causing him to suffer from shock and emotional trauma based on his concern for his wife; (3) because of the attitude of the investigating officers toward the defendant; (4) because of promises made by the investigating officers to the defendant; and (5) because the defendant was coerced by the investigating officers into making these statements.
A second motion was also filed on August 3, 2001 and stated in part as follows:
5. The statements were involuntary because of statements made to the defendant by the investigating officers were intentionally false and misleading regarding their intentions concerning the interview.
6. That all statements and interviews were made because of promises made by the investigating officers to the defendant regarding their intentions to bring charges against this defendant and the wife of this defendant. That the statements were involuntary in that the government did not live up to their promises and therefore coerced the defendant into making these statements in hopes of gaining the reward which he was promised.
R.E. at 6 (emphasis added).
The government filed a response on August 24, 2001 and replied to McKee’s contention that the teachings of Miranda had been violated by demonstrating that McKee was never in custody during any of the three questioning sessions conducted on February 17, 2000, February 25, 2000, and March 14, 2001. Additionally, the government pointed out that Brian McKee was accompanied by counsel for the interviews of February 25, 2000 and March 14, 2001. However, the government’s response ignored the allegations of a coerced statement.
The evidentiary hearing in response to Brian McKee’s motion to suppress his statements was conducted on November 19, 2001 before a magistrate judge. McKee testified that he had been promised that if he cooperated with the investigation, his wife would not be prosecuted. The government did not present any testimony to rebut the McKee claim of an involuntary admission.
Magistrate Judge Walker’s Report and Recommendation filed on December 14, 2001 addressed the issue of voluntariness *1307 as raised by Brian McKee and recommended a denial of his motion to suppress.
On December 27, 2001, Brian McKee’s counsel filed very thorough objections[3] to the Report and Recommendation of Magistrate Judge Walker.
On January 4, 2002, the district court, after stating that “he engaged in an independent review of the file,” denied the objections of Brian McKee entered on December 27, 2001.
The watershed case of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), settled the dispute as to whether a judge should submit the issue of voluntariness of a confession to the jury with instructions to ignore the confession if the jury found the confession to be involuntary. The Court held that the issue of voluntariness was to be decided in a pretrial setting by the judge. If the confession was deemed involuntary, it was not to be submitted to the jury.
In this case, Brian McKee offered testimony on the issue of voluntariness. His testimony was not rebutted. In her recommendation, Magistrate Judge Walker opined that McKee’s testimony was not credible and thus excused the lack of rebuttal by the government.
The ruling in United States v. Raddatz, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), with respect to the use of magistrate judges to conduct suppression hearings in criminal cases in United States District Court proceedings, merits discussion. By a 5-4 vote, the Supreme Court determined that the district court did not have to hear anew the conflicting testimony heard by the assigned magistrate judge who conducted the suppression hearing.[4] The defendant testified that he had made incriminating statements at a meeting with government agents only after “obtaining confirmation” from the agents' of their earlier promise that the indictment against him would be dismissed if he cooperated. The agents testified at the suppression hearing and denied making the promise. Confronted with an issue of credibility, the magistrate judge filed a report which recommended that the defendant’s motion be denied after stating: “I find the testimony of the Alcohol, Tobacco and Firearm Agents more credible ...; I find that Federal agents never advised [respondent] that charges against him would be dismissed, if he cooperated.” The Seventh Circuit had ruled that Raddatz had been deprived of due process by the procedure used and by the failure of the district court to rehear the testimony before accepting the recommendation of the magistrate judge. Nonetheless, the Supreme Court ruled that the due process rights of the defendant were protected by the Federal Magistrates Act because the district court acts as the ultimate decision maker on the defendant’s suppression motion with broad discretion to accept, reject or modify the magistrate judge’s proposed findings which include the discretion to hear the witnesses to resolve conflicting credibility claims. The majority held that the de novo determination of contested credibility assessments without personally rehearing the five testimony did not violate due process.
*1308 In the Raddatz decision, the majority-opinion written by Chief Justice Burger described the actions of the district court after it received the magistrate’s report as follows:
Respondent filed objections to the Magistrate’s report. In rendering its decision, the District Court stated that it considered the transcript of the hearing before the Magistrate on the motion to suppress, the parties’ proposed findings of fact, conclusions of law, and supporting memoranda, and that it read the recommendation of the Magistrate and heard oral argument of counsel. Finding “that the three statements given by the defendant and sought to be suppressed were made voluntarily,” the District Court accepted the recommendation of the Magistrate and denied the motion to suppress.
447 U.S. at 672, 100 S.Ct. 2406.
In the case at hand, the district court stated, in response to the objections to the magistrate’s report as it applied to the defendant Brian McKee’s objections to the denial of the motion to suppress, simply that he made “an independent review of the file” and, based on that review, denied the motion. Contrary to Raddatz, there is no suggestion that the district court had considered the transcript of the testimony; there is no suggestion of a “de novo determination” of those portions of the magistrate’s report, findings or recommendations to which the objections had been made, as required by 28 U.S.C. § 636(b)(1)(C). Furthermore, the absence of any suggestion of a de novo determination comes in a situation where, as pointed out by the magistrate and contrary to the conflicting testimony of the setting in Rad-datz, the government did not even bother to offer rebutting testimony to the testimony of Brian McKee.
Under the circumstances as above outlined, and accepting the teachings of Rad-datz, it is my view that the due process rights of Brian McKee were violated in this case.[5] To hold otherwise would be the equivalent of improperly delegating Article III powers.[6]
Consequently, I would reverse the conviction of Brian McKee, vacate his sentence, and remand for a new trial.

. The other appellants, Faulk, Williamson, and Jennifer McKee, all opposed the admission of Baker's testimony that Brian McKee had told Baker that McKee knew what he was doing was illegal as a violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). I concur with my brethren that the admission of Brian McKee’s testimony did not violate Bruton. My review of the record indicates that the government only used the admission of "illegality” against Brian McKee. Moreover, the district court properly limited the jury’s consideration of the admission to the government's case against Brian McKee.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The Report and Recommendation was filed on Friday, December 14, 2001. McKee's counsel is located in Gadsden, Alabama. He filed the objections on December 27. No claim was advanced that the objections were filed untimely. The record is inconclusive as to whether Brian McKee’s counsel received the Report and Recommendation on December 14. Consequently, for the purpose of this dissent, I conclude that the objections of December 27 were timely filed.

. In so ruling, the Supreme Court reversed the contrary decision in United States v. Raddatz, 592 F.2d 976 (7th Cir.1979).

. I find support in Martinez v. Estelle, 612 F.2d 173, 180 (5th Cir.1980), in which the Fifth Circuit found, after citing Jackson v. Denno, that "the record before us does not establish with ‘unmistakable clarity’ that the trial judge reliably determined the voluntariness of the confession. Jackson v. Denno has not been satisfied.” See also Jeffrey S. v. State Board of Education of State of Georgia, 896 F.2d 507, 513 (11th Cir.1990) (criticizing failure to conduct the requisite de novo review where the district court "relied heavily upon the magistrate's assessment of the evidence and his judgment in drawing reasonable inferences therefrom.”); Stokes v. Singletary, 952 F.2d 1567, 1576 (11th Cir.1992) (criticizing district court’s failure "to accord a de novo review of the magistrate’s factual findings”). The majority here seems to be setting up a new standard of review based on the length of experience of the district judge.

. Although 28 U.S.C. § 636(b)(1)(B) permits a district judge to refer a motion to suppress to a magistrate judge for recommendations regarding disposition, § 636(b)(1)(C) "meticulously sets forth a de novo review procedure.” Gomez v. United States, 490 U.S. 858, 874, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) (holding that allowing a magistrate judge to conduct the voir dire for jury selection in a felony case was not harmless error, especially because it was "without any meaningful review by a district judge”). I doubt that the Gomez Court would find “meaningful” the cursory and unexplained "review of the file” conducted by the district court in the instant case.