**Mrs. Clyde THOMASON, Appellant,**

v.

**William G. COOPER, M.D., as President of Board of Trustees, Little Rock Independent School District, et al. (Defendants), and John Aaron, a minor, and Thelma Aaron, a minor, by their mother and next friend (Mrs.) Thelma Aaron, a feme sole, et al. (Plaintiffs), Appellees.**

**No. 15915.**

United States Court of Appeals Eighth Circuit.

April 28, 1958.

Griffin Smith, Little Rock, Ark. (Wood & Smith, Little Rock, Ark., were on the brief), for appellant.

Wiley A. Branton, Pine Bluff, Ark. (Thurgood Marshall, New York City, was with him on the brief), for appellees John Aaron, et al.

A. F. House, Little Rock, Ark., filed brief for appellees William G. Cooper, et al., and Little Rock Independent School Dist.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from an order of the District Court entered on August 30, 1957, making Mrs. Clyde Thomason a party defendant in the case of Aaron v. Cooper, 143 F.Supp. 855, and enjoining her and the class she represents from using an order of the Chancery Court of Pulaski County, Arkansas, as a means for preventing the Little Rock School Board from opening on September 3, 1957, the partially integrated high schools in the Little Rock School District in accordance with the Board's plan of integration, and from frustrating the judgment and decree of the United States District Court for the Eastern District of Arkansas of August 15, 1956, in Aaron v. Cooper, ap-

proving that plan and providing for its effectuation. That judgment and decree was affirmed by this Court in 243 F.2d 361, and, in effect, became its judgment and decree. See Hagerott v. Adams, 8 Cir., 61 F.2d 35, 36, and cases cited.

The instant case is very fairly stated in appellant's brief as follows:

"This appeal is an outgrowth of proceedings originating in United States District Court at Little Rock reported in Aaron v. Cooper, 143 F. Supp. 855 and affirmed on appeal to this court in 243 F.2d 361.

"The original plaintiffs were Negro children who petitioned the district court for an injunction and declaratory judgment designed to effectuate immediate admission to Little Rock Central High School and other schools in the district. The respondent school board answered setting forth a plan for admission of Negro pupils over a period of seven years beginning at Central High School in the two upper grades.

"Upon trial the district court dismissed the petition, found that the plan of respondent was constitutional compliance, and retained jurisdiction for future orders. This decision was affirmed on appeal to this court.

"On August 27, 1957 Mrs. Clyde Thomason, the present appellant, filed a petition with Pulaski Chancery Court at Little Rock in which the Little Rock School Board was named respondent reciting the announced intention of respondent to permit enrollment of Negro pupils at Little Rock Central High School at the beginning of the school term September 3, 1957. The petition recited the adoption of certain initiated acts by the voters of Arkansas prohibiting the required enrollment of children in integrated schools. It was alleged that the imminent prospect of admission of Negro pupils to previously white schools had created a genuine danger of violence and civil commotion.

"A hearing on this petition was held August 29, 1957 and testimony was given. A decree was entered containing, among others, the following recital:

" 'Plaintiff has offered testimony of considerable probative value consisting of information received through her own efforts and the testimony of Orval E. Faubus, Governor of Arkansas, tending to show that until a comparatively recent time the plan proposed by the school board for gradual integration could be well calculated to succeed without serious incident but that through certain events over which the school board had no control public sentiment has undergone a swift change and that a a probability of violence and civil commotion exists in the event the plan is carried out at this particular time.'

and further,

" 'the Chancery Court has jurisdiction of the parties of the subject matter for the sole and limited purpose of issuing whatever orders are necessary to maintain order and prevent civil commotion.'

"The chancellor then proceeded to state:

" 'The function of Pulaski Chancery Court, in view of Brown v. Board of Education [347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083] is limited to orders touching on restraint of conditions reasonably calculated to result in violence and civil commotion. The opinion of this court is not intended to impair or challenge the basic principle announced in Brown v. Board of Education because agreement or disagreement with such decision is not essential to decision here.'

"An order was issued restraining the school board from requiring pe-

titioner's child or any other white child from enrolling in and attending a school where both white and Negro children are enrolled and from enrolling Negro children in schools subject to the jurisdiction of Little Rock School Board which had been maintained exclusively for white children.

"On August 29, 1957 the school board filed a petition with United States District Court at Little Rock reciting the background above referred to, attaching a copy of the injunction and asking that Mrs. Thomason and 'the class she represents' be [made parties defendant in Aaron v. Cooper, and be] enjoined from using the order of the Chancery Court.

"The district court heard argument [pursuant to an order to show cause] on August 30, 1957 and immediately granted the relief requested."

Title 28 U.S.C. § 2283, "Stay of State court proceedings," provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The appellant in her brief frankly concedes that the federal district court had the power ultimately to enjoin the State court proceedings, but says:

"Our basic criticism is not what was done but of the manner in which it was done.

"This appellant was not a party to the original proceeding. Her application to Pulaski Chancery Court for an injunction against the Little Rock School Board was a proceeding *in personam* and until she had been given notice and accorded a hearing in United States District Court she was not subject to its process. After the state court injunction had issued, a copy of the petition and notice in United States District Court was delivered to appellant's counsel and accepted in lieu of service on appellant. The petition was unsupported by verification or affidavit and the notice issued in connection therewith recited an application that appellant 'be temporarily enjoined from attempt to compel petitioners to observe or put into effect any order * * * of the Chancery Court of Pulaski County * * *.'

"When the petition was presented in district court only argument of counsel was heard. At the conclusion of argument the district court issued a permanent injunction against appellant. The order specifically negatived any requirement for security.

"Procedure for obtaining injunctions or restraining orders appears as Rule 65(a) 65(b) [Federal Rules of Civil Procedure, 28 U.S.C.A.]. A sharp distinction is made between restraining orders and injunctions."

No contention is made that the appellant was not represented at the hearing or that the court was not fully advised as to the facts or that there were any controverted issues of fact. Her assertion is that the District Court acted precipitately and did not observe the applicable rules of procedure. She asks that the injunction be dissolved and that a restraining order be substituted in lieu.

Obviously, the decree of the state Chancery Court was in direct conflict with the judgment and decree of the federal District Court and of this Court affirming that judgment and decree. The School Board was between "the upper and the nether millstone." It had, in effect, been ordered by the federal court to carry out the plan of school integration, and had by the state court been enjoined from carrying it out. The schools were about to be opened and prompt action was imperative to enable the School Board to know whether to proceed with its plan, confirmed by the federal district and appellate courts, or whether to abandon it because of the decree of the state court.

We have no doubt whatever that the federal District Court—with all parties in interest represented, and with all the facts fully known and understood—had the power and the duty, after a hearing, in order "to protect or effectuate its judgments," to stay the state court proceedings. Whether the District Court's order be called a permanent injunction, a temporary injunction, a restraining order, or merely a stay to protect and effectuate its judgment, is, in our opinion under the circumstances, of no material consequence. It is substance, not form, which is important. Compare, Stratton v. St. Louis Southwestern Railway Co., 282 U.S. 10, 17, 51 S.Ct. 8, 75 L.Ed. 135. The federal District Court was certainly not required to permit the decree of the state court to frustrate the judgment and decree of the federal court approving and effectuating the plan of the School Board for the gradual integration of the schools. A federal court should not, when prompt action is required, be compelled to indulge in useless formalities in protecting its judgments from being emasculated by state court proceedings.

The order appealed from is affirmed.