Andrew L. MANNINGS, et al., Plaintiffs,

v.

SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA (formerly Board of Public Instruction of Hillsborough County, Florida), et al., Defendants.

No. 58–3554–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

June 30, 1992.

Francisco Rodriguz, [term 01/21/92], Warren H. Dawson, Tampa, Fla., for plaintiffs.

Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, Walter Crosby Few, Few & Ayala, John William MacKay, John W. MacKay, P.A., Tampa, Fla., for defendants.

## ORDER ON REPORT AND RECOMMENDATION

KOVACHEVICH, District Judge.

This cause came to be heard before the Honorable Charles R. Wilson, United States Magistrate Judge, upon the Defendant's Amended Motion for Injunctive Relief. Judge Wilson had the authority to hear this motion pursuant to 28 U.S.C. Section 636(b)(1), and Rule 72 of the Federal Rules of Civil Procedure. After considering the motion, the memoranda, and argument of counsel at a hearing conducted on January 15, 1992, and being otherwise fully advised on the premises, Judge Wilson recommended that the motion be granted as follows:

1. Permanently enjoin the parties and their counsel in the case captioned *Robert John Burr, et al. v. School Board of Hillsborough County, Florida,* Case No. 91–8747–C, in the Circuit Court of Hillsborough County, Florida, and all other persons acting with them, from interfering with the jurisdiction of this Court and from proceeding with the prosecution of said suit, or any other suit which encroaches upon the orders of this court in this case;

2. Permanently enjoin the parties and their counsel in the administrative proceedings captioned *Norman Edwin Armstrong, Jr. et al. v. The School Board of Hillsborough County, Florida,* Case No. 91–5333R, with the State of Florida Department of Administration, Division of Administrative Hearings, and all other persons acting with them, from interfering with the jurisdiction of this Court and from proceedings with the prosecution of said administrative proceedings, or any other administrative proceedings which encroach upon the orders of this Court in this case;

3. Permanently enjoin the Judges of the Circuit Court for Hillsborough County, Florida from proceeding further in Case No. 91–8747–C, except for purposes of dismissing the action with prejudice, and from otherwise interfering with the jurisdiction of this Court in the case of *Andrew L. Mannings v. School Board of Hillsborough County, Florida,* 58–3554–CIV–T–17A;

4. Permanently enjoin any representative of the Department of Administration, Division of Administrative Hearings, from proceedings further in Case No. 91–5333R, except for purposes of dismissing the proceedings with prejudice, and from otherwise interfering with the jurisdiction of this Court in the case of *Andrew L. Mannings v. School Board of Hillsborough County, Florida,* 58–3554–CIV–T–17A.

This Court has reviewed the findings of fact set out in the Report and Recommendation and incorporates them by reference (A copy of the report and recommendation is attached hereto). However, this Court must make a *de novo* determination with respect to this dispositive motion to which the intervenors have filed an objection. 28 U.S.C. Section 636(b)(1)(C); Fed.R.Civ.P. 72(a); *United Steelworkers of America v. New Jersey Zinc Co.,* 828 F.2d 1001, 1005 (3d Cir.1987; *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258, 262 (D.N.J.1991).

On February 21, 1992, intervenors filed a Written Objection to Proposed Findings and Recommendations in Magistrate's Report. They requested that this Court reject the Report and Recommendation; and that the Court receive further evidence and oral argument in this matter. The intervenors summarized their specific objections as follows:

[I]ntervenors object to the analysis of *Blalock* and election set forth in footnote 5, the finding that the intervenors cannot seek relief through intervention in this action, and the recommendations set forth in paragraphs 1, 2, 3, and 4 of the 'Conclusion' section of that report. [I]ntervenors simply contend that the cur-

rent plan was not adopted in accordance with state law, and that the plan itself violates state constitutional guarantees. Nonetheless, the intervenors failed to bring to the attention of this court the decision in *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), where the Supreme Court clarifies the proper application of the Anti–Injunction Act.

In *Atlantic,* the Brotherhood of Locomotive Engineers (BLE) had been picketing a switching yard owned by Atlantic Coastline Railroad (ACL). *Atlantic,* 398 U.S. 281, 90 S.Ct. 1739. ACL requested an injunction which was eventually granted by a Florida court. As a result, BLE moved in state court to have the injunction dissolved but was unsuccessful. *Id.* Thereafter, BLE returned to the Federal District Court where its request for an injunction was granted. *Id.* The Court of Appeals affirmed the decision. It reasoned that the federal injunction was proper under 28 U.S.C. § 2283, commonly known as the Anti–Injunction Act, exceptions either "to protect or effectuate" or as "necessary in aid of the courts jurisdiction." *Id.* The Supreme Court held that the federal injunction was not justified under the exceptions listed in 28 U.S.C. § 2283 and was therefore improperly issued. *Id.*

The Anti–Injunction Act, Section 2283, originated as an Anti–Injunction Statute that was passed by congress in 1793. *Atlantic,* at 285–87, 90 S.Ct. at 1742–43 (general discussion of the background and policy which led Congress to pass the predecessor of Section 2283, the anti-injunction statute of 1793). This statute followed the passage of the Federal Judiciary Act of 1789, 1 Stat. 73, which gave the lower federal courts their powers "not including the power to review directly cases from state courts." The Federal Judiciary Act made it clear that this country has two separate and distinct legal systems which proceed independently of each other with ultimate review in the Supreme Court. *Id.* at 286, 90 S.Ct. at 1742–43. Therefore, to make this dual system function, Congress passed the Anti–Injunction Statute of 1793

to establish clear lines of demarcation between the Federal and State court systems. *Id.,* citing, *Oklahoma Packing Co. v. Gas Co.,* 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 537 (1940).

The present Anti–Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The present act should be read as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Id.* Furthermore, "since the statutory prohibition against such injunctions in part rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction." *Id.* at 287, 90 S.Ct. at 1743. Therefore, whenever a court is faced with a question as to the propriety of a federal injunction against state court proceedings, "any doubts ... should be resolved in favor of permitting the state court to proceed in an orderly fashion to finally determine the controversy." *Id.* at 297, 90 S.Ct. at 1748.

Although the state court proceedings will likely interfere with federal rights and constitutional guarantees which this Court must protect, such does not give this Court the power to enjoin the state court proceedings. See, *Id.* at 294, 90 S.Ct. at 1746. Moreover, even though this court has jurisdiction, and the requested injunction is related to our jurisdiction, the exception only applies where the requested injunction is absolutely necessary "in aid of" that jurisdiction. See, *Id.* at 295, 90 S.Ct. at 1747. Thus, since this Court has some doubt as to whether it has the power, based on an exception to Section 2283, to grant the injunction, we decline to do so.

The Supreme Court's decision in *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) raises additional doubts as to whether the decision to grant the

requested injunction would be proper. *Martin* reminds us that it is "part of our 'deep-rooted historic tradition that everyone should have his own day in court'." *Id.* at 762, 109 S.Ct. at 2184, citing, 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4449, p. 417 (1981). "A judgement or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Id.*

Our decision in this case, to uphold the consent order, may resolve the issues presented as between the parties to the consent order. However, parties who were not involved, and who were not in privity with those involved, can not be denied their day in court. Thus, since issuing the requested injunction would in effect deny the intervenors the opportunity to have their case decided in a court of law, granting the injunction would be improper. Instead, the state court proceedings should be allowed to continue. The state court has the power to resolve the controversy based on applicable federal law with the ultimate review of its determination in the Supreme Court of the United States. Accordingly it is

ORDERED that the Report and Recommendation be REJECTED by this Court and the Motion for Injunctive Relief be DENIED.

DONE and ORDERED.

## REPORT AND RECOMMENDATION

CHARLES R. WILSON, United States Magistrate Judge.

THIS CAUSE is before the Court upon the Defendant's Amended Motion for Injunctive Relief (doc. 439).[1] The Court has considered the motion, the memoranda, and the argument of counsel at the hearing conducted on January 15, 1992, and is otherwise fully advised on the premises. Based on the following findings of fact and conclusions of law, required by Fed.

R.Civ.P. 52(a), it is recommended that the motion be granted.

## FINDINGS OF FACT

1. This Court first exercised jurisdiction over the desegregation of the Hillsborough County public schools in 1958, and has specifically retained jurisdiction in order to continue the progress of the Hillsborough County public schools toward a unitary system from which all vestiges of past discrimination have been eliminated.

2. On July 23, 1991, the School Board of Hillsborough County ("School Board") adopted a Middle School Task Force Report[2] (the "Report") to aid the School Board in fulfilling its duty to develop a desegregated school system. On October 24, 1991, the Court approved the Report and entered a Consent Order that a) modifies the Court's prior orders concerning the desegregation plan for Hillsborough County public schools; and b) requires the School Board to continue with the planning necessary to implement the principles and concepts of the Report. The Consent Order specifically approves the general approach of the Report "in principle and in concept" and authorizes the School Board and its staff to undertake the preparation of annual detailed plans for modification of grade structures, student assignments, and other areas of school system operation in order to implement the general approach over a period of years. (Consent Order at 4–5). However, no attendance modification will take place without further order of the District Court as such changes may be presented to the District Court on an annual basis. *Id.* at 5–6.

3. On August 29, 1991, private citizens filed a class-action complaint styled *Robert John Burr, et al. v. School Board of Hillsborough County, Florida,* Case No. 91–8747–C, in the Circuit Court for Hillsborough County, Florida ("Circuit Court"), in which they maintain that the Report's proposals violate Florida law restricting student transportation and privacy rights pro-

---

1. This matter was specifically referred to the undersigned by United States District Judge Elizabeth A. Kovachevich.

2. Petitioners refer to the Report as "Task Force Report No. 3."

tected by the Florida Constitution. They seek declaratory relief regarding the application of Florida law and permanent injunctive relief "prohibiting Defendant [School Board] from implementing Task Force Report No. 3." (Prayers for Relief, Counts II and IV, Circuit Court Complaint).

4. On October 2, 1991, private citizens and the "Association Against Forced Busing" filed a petition for administrative hearing styled *Norman Edwin Armstrong, Jr. et al. v. The School Board of Hillsborough County, Florida,* Case No. 91–5333R, with the State of Florida Department of Administration, Division of Administrative Hearings ("DOAH"). The petitioners claim that the Report is invalid because the School Board allegedly violated several Florida statutes in the course of adopting the Report.

5. On December 2, 1991, the School Board, concerned that the state proceedings could impact the Report's implementation, filed its Motion for Injunctive Relief. The motion requests that this Court enjoin the Circuit Court and the DOAH from taking any further action which may affect the School Board's ability to implement the Report and carry out the mandates of this Court's Consent Order.

6. Any finding of fact made herein which constitutes a conclusion of law is hereby adopted as such.

## CONCLUSIONS OF LAW

1. The United States District Court for the Middle District of Florida has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. § 1331 and the Fifth and Fourteenth Amendments to the United States Constitution. The Court has specifically retained jurisdiction to receive information and enter any orders "necessary to effectuate the implementation of the middle school plan consistent with the requirements of the Constitution." (Consent Order at 9). The Court has also indicated that its prior orders regarding school desegregation would remain in effect to the extent they were not modified by the terms of the Consent Order. *Id.*

2. The Court will analyze separately the propriety of the District Court enjoining a) the state court from imposing injunctive relief against the Report's implementation; b) the state court from granting declaratory relief; and c) the DOAH proceedings.

### State Court Injunctive Relief

3. In Counts II and IV of their Circuit Court Complaint, Petitioners request that the state court permanently enjoin the School Board from implementing the Report. This Court, however, has expressly ordered the School Board to forthwith commence the phased implementation process of the Report. (Consent Order at 3). Thus, to the extent the Petitioners seek a state court order directly contravening this Court's Consent Order, the state court proceedings are presently on a collision course with this Court's proceedings.

3. Under these circumstances, the Court has broad power, pursuant to the All Writs Act, 28 U.S.C. § 1651, "to enjoin third parties, *including state courts,* from interfering with its desegregation orders." *Valley v. Rapides Parish Sch. Bd.,* 646 F.2d 925, 943 (5th Cir. Unit A 1981) *remanded,* 653 F.2d 941 (5th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1430, 71 L.Ed.2d 650 (1982). "State policy must give way when it operates to hinder vindication of federal constitutional guarantees." *Id.*

4. State policy gave way in *Thomason v. Cooper,* 254 F.2d 808 (8th Cir.1958), a case factually analogous to this one. There, after the district court approved an integration plan and provided for its effectuation, a class of individuals successfully petitioned a state court to enjoin implementation of the plan. The district court then prohibited the class from enforcing the state court order and stayed the state proceedings. The Eighth Circuit affirmed the stay, finding as follows:

We have no doubt whatever that the federal District Court—with all parties in interest represented, and with all facts fully known and understood—had the power and the duty, after a hearing, in order "to protect or effectuate its judg-

ments,"[3] to stay the state court proceedings ... The federal District Court was certainly not required to permit the decree of the state court to frustrate the judgment and decree of the federal court approving and effectuating the plan of the School Board for the gradual integration of the schools. A federal court should not, when prompt action is required, be compelled to indulge in useless formalities in protecting its judgments from being emasculated by state court proceedings.

*Id.* at 811; *see Swann v. Charlotte—Mecklenburg Bd. of Educ.,* 501 F.2d 383 (4th Cir.1974) (where the issues raised in state court were intertwined with issues and relief implicated in the federal action, the district court could properly enjoin the state proceedings); *Grenchik v. Mandel,* 373 F.Supp. 1298 (D.Md.1973).

5. Further, the district court need not wait until the state court enters a final judgment to stay the proceedings; it may enjoin both pending state proceedings which have not progressed to final judgment as well as prospective state litigation. *United States v. District of Columbia,* 654 F.2d 802, 810 (D.C.Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981) (federal court should not permit state court proceedings to frustrate effective disposition of the case where the proceedings in a federal court have been ongoing for several years).

6. Based on the foregoing, the Court concludes that the District Court has the authority to enjoin the state court from imposing injunctive relief preventing implementation of the Report, and recommends that it do so.

### State Court Declaratory Relief

7. In Count I of their Circuit Court Complaint, Petitioners state that, as a re-

sult of the Report's implementation, "their children will be seized from their homes and neighborhoods by defendant [School Board] and transported approximately 15.2 miles, ½ to 2½ hours, round trip, to schools far-removed from their homes and neighborhoods." (¶ 13, Circuit Court Complaint). They claim that such "seizure" constitutes governmental intrusion into the private lives of the parents and children of Hillsborough County, Florida, in violation of Article I, Section 23 of the Constitution of the State of Florida. (*Id.* at ¶ 15). Petitioners request the state court to determine their rights and obligations as affected by the Report and declare that the Report constitutes governmental intrusion into the private lives of parents and children subject to the Report.

8. Similarly, in Count III of the Complaint, Petitioners' request the state court to determine their rights and obligations as affected by the Report and declare that the Report violates Florida Statutes Section 234.01(1)(a), which provides that bus transportation shall be required only where students' homes are more than a reasonable walking distance from the nearest appropriate school.

9. This Court, however, previously addressed the rights and obligations of parties when state law conflicts with a federal desegregation plan in *Harvest v. Board of Pub. Instruction,* 312 F.Supp. 269 (M.D.Fla.1970). There, intervenors alleged that Florida's Pupil Assignment Law conflicted with this Court's desegregation order of January 29, 1970, and that the School Board was in a dilemma as to whom to obey. The Court strongly rejected this argument, holding that a state statute has no effect to the extent that it frustrates implementation of a federal constitutional mandate. *Id.* at 271 (citing *United States*

---

**3.** Title 28 U.S.C. § 2282, "Stay of State court proceedings," also known as the "Anti–Injunction Act," provides that "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Court concludes that the Anti–Injunction Act does not prohibit

the injunction it recommends be entered in this cause. The Eleventh Circuit, in *Battle v. Liberty Nat'l Life Ins. Co.,* 877 F.2d 877 (11th Cir.1989), specifically noted that the "in aid of" exception to the Anti–Injunction Act applies to an injunction of a state court action challenging federal court orders implementing an earlier consent decree. *Id.* at 881 (citing *United States v. District of Columbia* and *Swann* ).

*v. Greenwood Mun. Separate Sch. Dist.,* 406 F.2d 1086, 1093 (5th Cir.1969); *In re Advisory Opinion to the Governor,* 150 So.2d 721, 722 (Fla.1963); *Advisory Opinion of Attorney Gen. of Florida,* Feb. 2, 1970). The Court explained its holding as follows:

> It has been the law of the land for over 150 years that when federal court orders conflict with state law, the federal mandates prevail. *Martin v. Hunter's Lessee,* 1 Wheat. 304, 4 L.Ed. 97 (1816). Therefore, assuming that Section 230.-232(2), Florida Statutes, F.S.A., in any way interfered with the Court's order of January 29, 1970, the Court did not have to make a ruling thereon, because *it was and is crystal clear that the defendants are to obey the orders of this Court.*

*Harvest,* 312 F.Supp. at 272 (emphasis added).

10. In light of this Court's disposition of *Harvest,* the Court concludes that Petitioners cannot in good faith require a state court determination as to how their rights and obligations are affected by the conflict between Florida law and this Court's Consent Order and Report. *Harvest* has resolved the issue, thereby making it "crystal clear" that Florida law has no effect upon the Report; the federal Consent Order is binding and Petitioners are obligated to obey its mandate.[4] The Court shall not permit Petitioners' pretextual efforts for state declaratory relief to thwart vindication of the federal constitutional guarantees embodied in the Consent Order and the Report. It therefore shall enjoin Petitioners from seeking declaratory relief on the issues presented in the Circuit Court complaint.[5]

### State DOAH Proceedings

11. To the extent the Petition filed with the DOAH rehashes the issues regarding state statutory and constitutional law found in the Circuit Court complaint,[6] the Court finds that the DOAH proceedings regarding these issues should be enjoined for the reasons set forth above.

12. The other points raised in the petition allege that the School Board a) did not give adequate notice of its intent to adopt the Report; b) failed to post notice in the appropriate places; c) substituted the Report that was ultimately adopted for another Report at the last minute; d) excluded the public from a secret meeting regarding the Report; and e) failed to inform the public that a record was required to appeal the Board's decision. (Parts A) and B), Amended Petition for Administrative Hearing and Determination).

13. The Court finds that Petitioners, by filing DOAH proceedings, disregarded the procedure established by the Former Fifth Circuit to raise objections of this nature. In *Hines v. Rapides Parish Sch. Bd.,* 479 F.2d 762 (5th Cir.1973), the Former Fifth Circuit held that parental groups cannot question deficiencies in the implementation of desegregation orders by means of a separate federal class action. *Id.* at 764–65. The Court held that, in order to allow parental groups to present their complaints about the school system "without fostering

---

**4.** The Court also emphasizes that the United States Supreme Court held in 1971 that there is "no basis for holding that ... school board authorities may not be required to employ bus transportation as one tool of school desegregation." *Valley,* 646 F.2d at 939 (quoting *Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1, 30, 91 S.Ct. 1267, 1283, 28 L.Ed.2d 554 (1971)).

**5.** The Court recognizes that Judge Hodges did not interfere with the state court's ability to grant declaratory relief with respect to the application of Florida's "Sunshine Law," and any *in futuro* injunctive relief implementing such declaratory relief, in *Blalock v. School Bd.,* Case No. 64–168–CIV–FTM–10 (see Order of August 6,

1991). There, however, the state court's declaratory judgment would impact future hearings and proceedings incident to the implementation of the desegregation plan. Here, the state court action and the DOAH proceedings challenge the plan itself and have no future applicability. Accordingly, instead of prolonging the process and possibly increasing the burdens on all involved, the Court elects to enjoin the proceedings rather than engaging in the useless formality of referring them back to the state tribunals for dismissal.

**6.** These issues are raised in parts C) and D) of the Amended Petition for Administrative Hearing and Determination.

a multiplicity of new lawsuits over the same complicated and emotional issues which have already once been fought out in an all too lengthy court battles," the parental groups must instead petition the district court to allow them to intervene in the prior action. *Id.* at 765; *see Frank v. St. Landry Parish School Board,* 540 So.2d 1200, 1203 (La.Ct.App.1989) (state court dismissed state action, finding that proper course for plaintiffs was to seek intervention in federal court which established desegregation plan). The Court concludes that the DOAH proceedings should be enjoined on this procedural ground alone.

14. Further, the Former Fifth Circuit later refined the *Hines* intervention procedure by finding that parents seeking to intervene must demonstrate an interest in a *desegregated school system:* "Certainly every group must be allowed the opportunity to show the court that the desired and legally required unitary school system has not been achieved by an earlier court order." *United States v. Perry County Bd. of Educ.,* 567 F.2d 277, 279 (5th Cir.1978); *see also Pate v. Dade County Sch. Bd.,* 588 F.2d 501, 503 (5th Cir.), *cert. denied,* 444 U.S. 835, 100 S.Ct. 67, 62 L.Ed.2d 44 (1979). Thus, in order to intervene, parental groups must show that the proposed plan will not result in a more unitary school system. They cannot intervene merely because they challenge implementation of the plan. *Pate,* 588 F.2d at 503.

15. Thus, even if Petitioners had followed the appropriate procedure and sought to intervene in order to raise the notice and Sunshine Law issues, their motion would have been denied on the ground that they cannot demonstrate that their interest for intervention is a unitary school system. Petitioners challenge the Report's implementation simply because they oppose its effects. Since federal courts routinely reject such challenges,[7] this Court cannot permit the Petitioners to circumvent this Court's procedure and raise impermissible

claims in state court. The Court will therefore also enjoin the DOAH proceedings.

## CONCLUSION

For the reasons set forth above, the Court recommends that the District Court grant Defendant's Motion for Injunctive Relief as follows:

1. Permanently enjoin the parties and their counsel in the case captioned *Robert John Burr, et al. v. School Board of Hillsborough County, Florida,* Case No. 91–8747–C, in the Circuit Court of Hillsborough County, Florida, and all other persons acting with them, from interfering with the jurisdiction of this Court and from proceeding with the prosecution of said suit, or any other suit which encroaches upon the orders of this Court in this case;

2. Permanently enjoin the parties and their counsel in the administrative proceedings captioned *Norman Edwin Armstrong, Jr. et al. v. The School Board of Hillsborough County, Florida,* Case No. 91–5333R, with the State of Florida Department of Administration, Division of Administrative Hearings, and all other persons acting with them, from interfering with the jurisdiction of this Court and from proceedings with the prosecution of said administrative proceedings, or any other administrative proceedings which encroach upon the orders of this Court in this case;

3. Permanently enjoin the Judges of the Circuit Court for Hillsborough County, Florida from proceeding further in Case No. 91–8747–C, except for purposes of dismissing the action with prejudice, and from otherwise interfering with the jurisdiction of this Court in the case of *Andrew L. Mannings v. School Board of Hillsborough County, Florida,* 58–3554–CIV–T–17A;

4. Permanently enjoin any representative of the Department of Administration, Division of Administrative Hearings, from proceedings further in Case No. 91–5333R,

---

7. *See e.g., Valley,* 646 F.2d at 925 (intervention denied where residents claimed they did not receive notice that their school would be affected by the plan until after district court issued the plan); *Davis v. East Baton Rouge Parish Sch.*

*Bd.,* 721 F.2d 1425 (5th Cir.1983) (court denied intervention where parent group claimed that confidentiality order deprived them of right to participate in negotiation of plan and prohibited them from conferring with the School Board).

except for purposes of dismissing the proceedings with prejudice, and from otherwise interfering with the jurisdiction of this Court in the case of *Andrew L. Mannings v. School Board of Hillsborough County, Florida,* 58–3554–CIV–T–17A.

So recommended this 11th day of February, 1992.