Wanda K. **PATTERSON**, Plaintiff,

v.

Shirley S. **CHATER**, Commissioner of Social Security Administration, Defendant.

No. 95–1599–CIV–T–17(A).

United States District Court, M.D. Florida, Tampa Division.

Nov. 19, 1997.

Roger W. Plata, Roger W. Plata, P.A., St. Petersburg, FL, for Plaintiff.

Steven A. Nisbet, U.S. Attorney's Office, M.D. of Florida, Tampa, FL, for Defendant.

### *ORDER ADOPTING REPORT AND RECOMMENDATION*

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on the Report and Recommendation entered by Magistrate Judge Mark A. Pizzo, on September 25, 1997 (Dkt.9), and Plaintiff's objections thereto, filed October 10, 1997 (Dkt.10). After reviewing the Report and Recommenda-

tion findings in light of Plaintiff's objections, this Court adopts the Magistrate Judge's Report and Recommendation

## I. STATEMENT OF THE CASE

In May 1988, Plaintiff suffered a back, neck and head injury from an automobile accident. She sought treatment from Dr. Harry D. Wassel, an orthopedic surgeon, until January 1989 for pain in her back and neck along with numbness in her right fingers and right toes. Plaintiff alleges a disability commencing April 18, 1991 as the result of back problems. She filed a claim of disability in February 1993. On April 29, 1994, Plaintiff had a hearing before the Administrative Law Judge ("ALJ") where she testified about her alleged disability.

Plaintiff was 34 years old at the time of her hearing. She dropped out of school in the twelfth grade, and never attained a high school equivalency degree. Plaintiff has worked as a home health aide, a telephone sales representative, a dietary aide, an office clerk, and as a sales person at various retail stores.

Plaintiff returned to Dr. Wassel in March 1993, over four years after her last visit with him, and a month after she had filed her disability claim. This visit was solely related to the presentation of her Social Security disability claim. In September 1993, Dr. Wassel completed a physical assessment in which he opined Plaintiff could never work again. He performed another physical assessment in April 1994 that limited Plaintiff to lifting five pounds occasionally, and indicated that Plaintiff could not stand, sit, or walk for long periods of time.

At the request of the Commissioner of Health and Human Services (hereinafter "Commissioner"), another orthopedic surgeon, Dr. Robert Kelly, performed a consultative examination in May 1994. Dr. Kelly concluded Plaintiff could lift twenty pounds occasionally and eight to ten pounds frequently. He noted limited reaching ability, but did not find any sitting, standing, or walking restrictions. After considering the medical evidence, the ALJ found that Plaintiff suffered from a severe musculoskeletal impairment, but she still remained the residual functional capacity to perform a restricted range of light work and a full range of

sedentary work. Based, in part, on this opinion, the ALJ decided Plaintiff could return to her past relevant work as a telephone sales person and, accordingly, Plaintiff was not disabled as defined in the Social Security Act (hereinafter "the Act").

## II. STANDARD OF REVIEW

In order to be entitled to Social Security disability benefits and supplemental security income (hereinafter "SSI"), a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (1996). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3) (1996).

The Social Security Regulations (hereinafter "Regulations") outline a five-step sequential process for determining if a person is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (1996); *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The first inquiry is whether the claimant has engaged in substantial gainful activity at any time since the alleged onset date. If so, benefits must be denied. 20 C.F.R. §§ 404.1520(b), 416.920(b) (1996). If the claimant has not worked since the onset date, the second step in the process requires a determination of whether the claimant has a "severe" impairment or combination of impairments. An impairment is severe if it significantly limits the claimant's physical or mental ability to engage in basic work-related activities. 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.971 (1996). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 416.921 (1996). A disability or SSI claim is denied if the claimant does not have a severe impairment.

If the impairment or combination of impairments is, in fact, severe, then the third step requires a comparison of the claimant's

condition with the Commissioner's listed impairments. These impairments are considered so severe that they preclude substantial gainful activity and conclusively presume disability. 20 C.F.R. §§ 404.1520, 416.920 (1996).

If the claimant's condition does not meet or equal the requirements for any listed impairment, he or she cannot be considered disabled based upon medical facts alone. As such, step four requires a determination of whether the claimant is able to return to past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e) (1996). If claimant is unable to perform past relevant work, then the fifth and final step is an inquiry into claimant's ability to perform other work in the national economy, considering his or her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (1996). Claimant, then, is only entitled to benefits if unable to perform other work. *Id.*

**A. Review of ALJ findings**

■ A determination by the Secretary that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. § 405(g) (1996). If supported by substantial evidence, findings of the Commissioner of Health and Human Services are conclusive. *Id.* Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Company v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Substantial evidence is "more than a mere scintilla, but less than a preponderance." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427 (1971). The controlling reasonable mind standard mandates that if there is pertinent and adequate evidence supporting a decision, it must be upheld. *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990). This Court may not substitute its own judgment for the Secretary's nor re-evaluate the evidence unless the decision is clearly illogical and unsubstantiated. *See Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). *See also, Powell v. Heckler,* 773 F.2d 1572, 1575 (11th Cir.1985). Therefore, even if the evidence appears to weigh against the decision

of the Secretary, this Court must affirm the decision if there is sufficient supporting evidence. *Martin,* 894 F.2d at 1529 (11th Cir. 1990). *See Bloodsworth,* 703 F.2d at 1239 (11th Cir.1983). The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence, and whether the correct legal standards were applied. *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir.1988); *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983).

■ Moreover, it is the function of the Secretary, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971). Similarly, it is the responsibility of the Secretary to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient,* 323 F.2d 989 (5th Cir. 1963).

**B. The Magistrate's Report and Recommendation**

Under the Federal Magistrate's Act, Congress vested Article III judges with the power to authorize a United States Magistrate Judge to conduct evidentiary hearings. The relevant portion of this act is found at 28 U.S.C. § 636 (1996). A United States District Court Judge may designate a United States Magistrate Judge to conduct hearings, including evidentiary hearings, in order to submit proposed findings of fact and recommendations for the disposition of certain pretrial matters. 28 U.S.C. § 636(b)(1)(B) & (C) (1996); Middle District of Florida Local Rule 6.02. Within ten days after being served with a copy of the Report and Recommendation, any party may file written objections to the proposed findings and recommendations. *Id.* When a party makes a timely objection to a Report and Recommendation by a Magistrate Judge, the determination is subject to de novo review by the district court. *Gropp v. United Airlines, Inc.,* 817 F.Supp. 1558, 1561 (M.D.Fla.1993). However, portions of the Report and Recommendation that are not objected to will be evaluated by the district

court judge under a clearly erroneous standard of review. *Id.* at 1561–62.

## III. THE ALJ'S FINDINGS

After considering the evidence, the ALJ made the following eight findings:

1. The claimant met the disability insured status requirements of the Act on April 18, 1991, the date Plaintiff stated that she became unable to work, and continued to meet them through December 31, 1994, but not thereafter.

2. Plaintiff has not engaged in substantial activity since April 18, 1991.

3. The medical evidence establishes that the claimant has severe back pain syndrome affecting the cervical and lumbar spine, and obesity, but does not have an impairment or combination or impairments listed in or medically equal to one listed in 20 C.F.R. Appendix 1, Subpart P, Regulations No. 4 (1996).

4. Plaintiff's subjective complaints, including pain and other subjective symptoms are not supported by the objective medical or other evidence of record to the extent alleged.

5. Plaintiff has the residual functional capacity to perform work-related activities except for work involving greater than a restricted range of light work or a full range of sedentary work (citing, 20 C.F.R. §§ 404.1545, 416.945 (1996)).

6. Plaintiff's past relevant work as a phone sales person did not require the performance of work-related activities precluded by the above limitation(s) (citing, 20 C.F.R. §§ 404.1545, 416.945 (1996)).

7. Plaintiff's impairments do not prevent her from performing past relevant work.

8. Plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of the decision (citing, 20 C.F.R. §§ 404.1520(e), 416.920(e) (1996)).

## IV. THE REPORT AND RECOMMENDATION

The Report and Recommendation (hereinafter "R & R") entered by Magistrate Judge Mark A. Pizzo concluded that the ALJ followed the regulatory scheme in denying Plaintiff's claim for disability and SSI benefits and that the decision is substantially supported by the record as a whole. The R & R focused upon two propositions in coming to this conclusion.

### A. Dr. Wassel's Opinions

The R & R correctly notes that Plaintiff originally complained about the ALJ's rejection of Dr. Wassel's' opinions about her alleged impairments and disability. The R & R then points out that the Regulations require the ALJ to generally give more weight to the claimant's treating physician because this professional is most able to provide a detailed, longitudinal picture of the claimant's medical impairments. The treating physician can also bring a unique perspective to the medical evidence that cannot be obtained from any other source. 20 C.F.R. § 404.1527(d)(2) (1996).

Nevertheless, the physician's opinion is not entirely controlling. In the record in order for the ALJ to give it controlling weight, the opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with the other substantial evidence. *Id.* An ALJ must give reasons for rejecting the source's opinion. *Id.* Moreover, some medical opinions, such as ones that the claimant is disabled or unable to work, are not entitled to any special significance. These issues are reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e) (1996).

The R & R further states that the ALJ rejected Dr. Wassel's opinion because it was not supported by medical findings and was

controverted by other sources. The record supports the ALJ's reasoning. Dr. Wassel did not possess a detailed, longitudinal picture of Plaintiff's impairment. When he examined Plaintiff in March 1993 at Plaintiff's attorney's request, Dr. Wassel had not seen her in over four years. Thus, this exam was no different than the consultative exam performed by Dr. Kelly. Under the Regulations, the ALJ is entitled to consider the findings of a consultative exam. *See* 20 C.F.R. § 404.1527(f) (1996); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir.1986).

The ALJ also properly assessed Dr. Wassel's findings against the medical record for consistency, and gave reasons for rejecting the physician's opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (1996). Although Dr. Wassel diagnosed Plaintiff with a permanent disability, a CT scan requested by Dr. Wassel in 1988, and X-rays requested by Dr. Kelly in 1993, reveal no evidence of any degeneration or abnormalities except for a "transitional segment at the lumbosacral." Dr. Wassel provided no objective testing to support his findings, especially since April 1991, when the disability allegedly occurred. Indeed, Plaintiff continued to work for more than two years after ending treatment with Dr. Wassel in January 1989. As the ALJ correctly noted, Dr. Wassel's findings were inconsistent with the Plaintiff's own testimony regarding the limits of her physical activity and contrary to Dr. Kelly's finding, which was based in part on objective testing.

## B. Substantial Evidence Supports ALJ's Findings

The R & R then states that the ALJ's findings are supported by substantial evidence with regard to Plaintiff's subjective complaints of pain. The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. The pain standard requires:

1. Evidence of an underlying condition; and either,

2. Objective medical evidence that confirms the severity of the alleged pain arising from that condition; or,

3. The objectively determined medical condition must be of such a severity that it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991); *Brown v. Sullivan*, 921 F.2d 1233 (11th Cir.1991).

Because a credibility determination is critical to a decision, the ALJ is compelled to make an explicit credibility finding. *Foote v. Chater*, 67 F.3d 1553 (11th Cir.1995); *Hale v. Bowen*, 831 F.2d 1007 (11th Cir.1987); *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir.1986). The ALJ followed these standards as demonstrated in pages 19 and 20 of the record wherein he considered Plaintiff's testimony as to her ability to perform certain daily functions, her ability to stand without difficulty, her application for employment and desire to be employed, as well as her testimony that she only takes non-prescription pain medication.

## V. PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION

On October 10, 1997, Plaintiff brought forth four specific objections to the findings of the Report and Recommendation. After reviewing the R & R and Plaintiff's objections thereto, the Court hereby denies Plaintiff's requests for remand and reversal of the ALJ's decision, and fully adopts and confirms the R & R.

Plaintiff objects to the R & R on four grounds:

1. "That Dr. Wassel cannot and should not be treated in the same manner as a consultative exam performed by Dr. Kelly."

2. "That Dr. Wassel provided objective evidence of his original opinion in 1989 as well as his opinion of 1993."

3. "That Dr. Kelly's findings were based to whatever extent on x-rays which result was the wrong type of testing

for the problems that the Plaintiff has and as a result, the Plaintiff's complaints and problems are not inconsistent with Dr. Wassel, nor with Dr. Kelly's recommendation."

4. "In that there was objective evidence of the Plaintiff's physical problems, the pain standard in the 11th Circuit has been met and therefore dictates a finding of disability. The attempt to use the medical evidence and the Plaintiff's statements in such a way as to negate such determination resulted in 'sit and squirm' jurisprudence by creating the ALJ's own indices of what was required."

 First, Plaintiff asserts that it is "not right and is a misconstruction of the law," and "absolute nonsense" that the ALJ and Magistrate Judge both determined that Dr. Wassel should not be considered Plaintiff's treating physician after not seeing Plaintiff for over four years. Plaintiff asserts that in 1988, a Dr. Gordon Gilbert performed neurological tests on Plaintiff at the request of Dr. Wassel. Plaintiff conclusively states the results of these tests, but does not explain how they might affect any disability, or lack thereof, Plaintiff may have had. In addition, these tests are not relevant or controlling to a determination of disability when Plaintiff had not seen Dr. Gilbert or Dr. Wassel for over four years. In fact, the record shows that Plaintiff sought medical attention from Dr. Paul Mares throughout 1991 for various medical conditions, and from Century Medical Health Plan, Incorporated and Better Health Plan, Incorporated throughout 1992 and 1993. Dr. Wassel was not Plaintiff's treating physician.

 Second, Plaintiff claims that Dr. Wassel had objective evidence to support his conclusions on the basis of his diagnosis and opinion. Plaintiff further states that the "Magistrate Judge, much as the ALJ, is confused under the law as to what objective evidence is." Again, Plaintiff relies upon the

1988 tests performed, at Dr. Wassel's request by, Dr. Gordon Gilbert. As previously stated, these tests were over four years old and were not done by a treating physician. While they may be evidence of something, this Court "may not substitute its own judgement for the [ALJ's] nor re-evaluate the evidence unless the decision is clearly illogical and unsubstantiated." *See Bloodsworth*, 703 F.2d at 1239 (11th Cir.1983). In addition, substantial evidence is "more than a mere scintilla, but less than a preponderance." *See Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (1971). Accordingly, both Dr. Wassel's 1989 report and Dr. Gilbert's 1988 report are not even a mere scintilla of evidence of Plaintiff's current condition, if for no other reason than their age, disjunction with Plaintiff's current condition, and the complete lack of continuous treatment for over four years.

Plaintiff's third objection to the R & R submits that Dr. Wassel's findings were not inconsistent with Plaintiff's testimony nor with Dr. Kelly's recommendation. Plaintiff objects to the Magistrate Judge's characterization of Dr. Kelly's x-rays as objective testing. However, Plaintiff simply states that "[i]t is a known fact that x-rays may be used only in looking for some sort of bone disorder, but other type of testing may be necessary to find soft tissue lesions, which may be causing some type of neurological disorder." This objection need not be further addressed by the Court, as Dr. Wassel has already been determined not to be the treating physician. Furthermore, the ALJ properly relied upon Dr. Kelly's consultative recommendation, as it was supported by substantial evidence, while Dr. Wassel's was not.

 Finally, Plaintiff alleges that the ALJ engaged in "sit and squirm jurisprudence" which is prohibited by the Eleventh Circuit in *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir.1984). Plaintiff further alleges that the Magistrate overlooked the ALJ's acts. The majority of this last objection is duplicative of

various portions of the previous three. However, the Court does find that the ALJ did not engage in "sit and squirm jurisprudence." *Wilson* addressed an ALJ's determination of the disabling nature of pain supported by substantial evidence. The Court noted that in making such a determination, the ALJ must recognize that pain alone can be disabling even if there is no objective medical evidence to support claimant's testimony about pain. *Wilson*, 734 F.2d at 517. The Court further noted that credibility determinations are for the ALJ. *Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1242 (11th Cir.1983)). However, the Court then went on to describe "sit and squirm" jurisprudence:

> "In this approach, an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied. As the court observed in [*Tyler v. Weinberger*, 409 F.Supp. 776 (E.D.Va. 1976)], this approach will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations of pain, or, worse yet, discourage them from exercising the right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel. 409 F.Supp. at 789. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.1982)."

*Id.* In *Wilson*, the ALJ determined that claimant was not suffering pain of a disabling nature because Wilson did not appear to be in great pain at the hearing and no clinical findings supported Wilson's testimony. The ALJ even concluded that Wilson did not need all the medication that had been prescribed to him. The ALJ thus improperly engaged in "sit and squirm" jurisprudence and erroneously required objective medical evidence to support Wilson's testimony about pain. Because of these errors, the Court remanded the case to the Secretary for further consideration under proper standards. *Wilson*, 734 F.2d at 518.

Plaintiff has misapplied the standard set forth in *Wilson*.

Plaintiff states in her objections that in the ALJ's finding of a scarcity of medical findings by Dr. Wassel, "[w]hat the ALJ really meant was that in his indices, which are required medically to determine disability, one must have x-ray evidence or MRI or CT scan evidence, in order to justify a finding of disability." *Wilson*, citing other cases, clearly focuses upon ALJ observations of claimants at the hearing. The index of traits refers to traits that tend to physically demonstrate pain as manifested by the demeanor and actions of claimant during a hearing. Plaintiff attempts to explain the ALJ's alleged "indices" as a requirement of some type of outside evidence that does not pertain to the physical acts of Plaintiff herself at the hearing. The important proposition asserted in *Wilson* is that the ALJ must expect a claimant to actually manifest in the presence of the ALJ certain subjectively created traits. This Court does not accept Plaintiff's attempted distorted expansion of the "sit and squirm" jurisprudence doctrine as applied in *Wilson*.

All other objections by Plaintiff are found to be without merit and do not warrant discussion by this Court. As to the portions of the Report and Recommendation not objected to by Plaintiff, this Court finds no clear error. Accordingly, it is

**ORDERED** that the Report and Recommendation (Dkt.9) is ADOPTED and incorporated by reference, the appeal of the denial of benefits is DENIED, and Plaintiff's objections are OVERRULED.